[Cite as *State v. Maranger*, 2018-Ohio-1425.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|   |   |   |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27492 |
| | : | |
| v. | : | T.C. NO. 2015-CR-2424 |
| | : | |
| ROBERT MARANGER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 13th day of April, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER JANS, Atty. Reg. No. 84470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

ROBERT BRENNER, Atty. Reg. No. 67714, P.O. Box 340214, Beavercreek, Ohio 45434
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

   **{¶ 1}** Defendant-appellant Robert Maranger appeals his conviction and sentence

for one count of rape (child under ten years of age), in violation of R.C. 2907.02(A)(1)(b),

a felony of the first degree; and one count of gross sexual imposition (child under thirteen years of age), in violation of R.C. 2907.05(A)(4), a felony of the third degree. Both counts were accompanied by sexually violent predator specifications, in violation of R.C. 2941.148(A). Maranger filed a timely notice of appeal with this Court on March 8, 2017.

{¶ 2} On August 7, 2015, at approximately 4:30 p.m., Butler Township Police Officers Ashworth, Guthrie, and Bilbrey were dispatched to a Quality Inn hotel located at 3661 Maxton Road in Butler Township, Ohio, on a report that an employee had observed a minor female involved in sexual activity with an adult male, later identified as Maranger. When the police arrived at the hotel, they spoke with the clerk, Linda Kerley. Kerley informed the officers that by utilizing a security camera located in the exercise room of the hotel, she had observed Maranger place his penis into the mouth of a minor female, later identified as the victim, J.C.F.N. Kerley also informed the officers that she had watched Maranger and J.C.F.N. walk to room #305 after leaving the exercise room.

{¶ 3} Thereafter, the officers went to room #305 and knocked on the door. Maranger, J.C.F.N., and Y.N., J.C.F.N.'s mother, exited the hotel room. While Officer Ashworth spoke with Maranger at the end of the hallway, Lieutenant Guthrie informed Y.N. of the allegations against Maranger. Y.N. informed Lt. Guthrie that Maranger was her boyfriend and J.C.F.N. was her daughter, and that the three of them had been on vacation in Washington, D.C. Y.N. further stated that they were traveling back to Wisconsin where they all lived together. Y.N. informed Lt. Guthrie that Maranger had previously been convicted of a sexually oriented offense and was required to register in Wisconsin. Kerley positively identified Maranger as the man she had observed in the surveillance video, and he was arrested and taken into custody. J.C.F.N. was taken to

Dayton Children's Hospital where she was evaluated and treated.

{¶ 4} Detective Kevin Sink traveled to the hotel where the offense had occurred in order to watch the surveillance video. Detective Sink testified that the video initially depicted Maranger and J.C.F.N. in the hotel pool playing a game where the child would go underwater and pause near Maranger's genital area. Maranger would then go underwater and briefly put his head between the child's legs before surfacing. Detective Sink testified that the video also depicted Maranger making a thrusting motion while the child straddled him in the pool for approximately thirty seconds.

{¶ 5} Detective Sink further testified that the video depicted that Maranger and J.C.F.N. left the hotel pool and entered the exercise room. Once in the exercise room, Detective Sink testified that the video showed Maranger turn off the lights and pull his penis out of his shorts. After exposing himself, Maranger pulled J.C.F.N. over to him, and she placed his penis in her mouth. Detective Sink made a copy of the surveillance video on a flash drive, and Maranger was transported to the Montgomery County Jail and charged with rape.

{¶ 6} Lt. Guthrie traveled to Dayton Children's Hospital in order to interview J.C.F.N. and her mother, Y.N. Y.N. informed Lt. Guthrie that she and J.C.F.N. began living with Maranger in his Wisconsin residence in June of 2015. Lt. Guthrie testified that Y.N. stated that other than the incident at the hotel that had just occurred, she was unaware of any suspicious sexual activity between Maranger and J.C.F.N. Y.N., however, did inform Lt. Guthrie that on two occasions while they were living together at Maranger's house, she discovered pornographic pictures on the computer involving an adult male and a small female child. When Y.N. confronted Maranger about the pictures,

he denied looking at any pornographic websites involving juveniles.

{¶ 7} After being treated at the hospital, J.C.F.N. was interviewed at CARE House on August 8, 2015. When she was asked by the interviewer about her relationship with Maranger, J.C.F.N. pulled a blanket over her head and refused to speak. Shortly after the CARE House interview, Y.N. and J.C.F.N. traveled back to Wisconsin, where they lived at Maranger's residence. Shortly after returning to Wisconsin, J.C.F.N. began disclosing prior sexual abuse committed by Maranger to Y.N. J.C.F.N. also began drawing pictures of the sexual acts involving Maranger. Based upon J.C.F.N.'s disclosures of the sexual abuse she had suffered at Maranger's hands, Y.N. contacted the Wisconsin authorities in order to arrange an interview. Thereafter, during another forensic interview conducted in Wisconsin, J.C.F.N. disclosed the additional sexual abuse committed by Maranger.

**Procedural History**

{¶ 8} On August 17, 2015, Maranger was indicted for one count of rape (child under ten years of age); and seven counts of gross sexual imposition (child under thirteen years of age). As previously stated, each count was accompanied by a sexually violent predator specification. At his arraignment on August 21, 2015, Maranger waived the reading of the indictment and pled not guilty to all of the counts in the indictment.

{¶ 9} On May 5, 2016, Maranger pled guilty to one count of rape and one count of GSI (Counts I and II) in exchange for the State's agreement to dismiss all of the remaining counts in the indictment. Although Maranger pled guilty to two of the underlying counts, he did not plead guilty to the attached specifications. Therefore, following the plea hearing, the trial court scheduled a bench trial, as elected by Maranger, to be held solely

with respect to the two remaining sexually violent predator specifications.[1]   On February 29, 2016, Maranger filed a motion to bifurcate the attached specification counts from the underlying offenses for which he was charged.   On the same day, the trial court granted Maranger's motion to bifurcate the specification counts.

{¶ 10} On August 12, 2016, Maranger filed a motion to suppress.   In his motion, Maranger challenged the validity of six search warrants that were issued by the trial courts in Montgomery County, Ohio, and Dane County, Wisconsin.   In his motion, Maranger also sought to suppress any statements he made to police and parole officers that related to his arrest in the instant case.   A hearing was held on said motion on August 25, 2016.   On September 29, 2016, the trial court issued a decision overruling Maranger's motion to suppress in its entirety.   After a two-day bench trial which ended on January 31, 2017, Maranger was found guilty of the two sexually violent predator specifications attached to his convictions for rape and GSI.

{¶ 11} On March 1, 2017, the trial court sentenced Maranger to a mandatory prison term of life in prison without the possibility of parole for rape, and a mandatory prison term of five years to life for GSI.   The trial court ordered that Maranger's sentences be served consecutively, with the sentence for GSI to run prior to his sentence for rape.   The trial court also designated Maranger a Tier III sex offender.

{¶ 12} It is from this judgment that Maranger now appeals.

{¶ 13} Maranger's sole assignment of error is as follows:

---

[1] R.C. 2971.02 states that "[i]n any case in which a sexually violent predator specification is included in the indictment, count in the indictment, or information charging a violent sex offense or a designated homicide, assault, or kidnapping offense and in which the defendant is tried by a jury, *the defendant may elect to have the court instead of the jury determine the sexually violent predator specification.*"

**{¶ 14}** "THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT'S MOTION TO SUPPRESS EVIDENCE."

**{¶ 15}** In his sole assignment, Maranger contends that the trial court erred when it overruled his motion to suppress evidence with respect to the search warrants issued on September 22, 2015, November 10, 2015, November 12, 2015, and May 4, 2016. Maranger argues that the trial court erred when it failed to suppress the evidence obtained from his home during a warrantless search by police which occurred on August 10, 2015. Maranger also argues that the trial court erred when it failed to suppress any statements made to police and parole authorities during the course of the investigation. Lastly, Maranger argues that the trial court erred when it failed to suppress the search of his computer which occurred on or about June 17, 2016.

**{¶ 16}** In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010–Ohio–116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592, 639 N.E.2d 498. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

**A. Warrantless Search of Maranger's Wisconsin Residence on August 10, 2015**

**{¶ 17}** Detective Brian Frisch testified that shortly after the incident occurred in Ohio, one of Maranger's neighbors in Wisconsin became aware of the arrest. The

neighbor contacted the Dane County Sheriff's Office in Wisconsin with information that he had personally observed Maranger with a young female child at his home. The neighbor stated that he was concerned because Maranger was a known sex offender. Based upon the information supplied by Maranger's neighbor, Deputy Brad Day from the Dane County Sherriff's Office was assigned to investigate. Deputy Day contacted the neighbor and interviewed him.

{¶ 18} Thereafter, Dane County Sheriff's Deputy Dale Veto contacted Y.N. in order to discuss the sexual assault. While speaking on the telephone, Y.N. disclosed two separate incidents when she observed Maranger viewing child pornography on a computer inside the home they shared in Wisconsin. Based upon the information from Deputy Veto, Detective Frisch contacted Detective Sink from the Butler Township Sheriff's Office in order to gather information regarding Maranger's sexual assault of J.C.F.N. Detective Sink provided Detective Frisch with the names of J.C.F.N. and Y.N., as well as their phone number.

{¶ 19} On August 10, 2015, Detective Frisch, accompanied by his partner, Detective Heidi Gardner, went to the residence where Y.N. and J.C.F.N. lived with Maranger in Wisconsin. At that time, Maranger was in custody in Ohio. Y.N. informed the detectives that she had moved in with Maranger in June of 2014, but J.C.F.N. had not come to live with them until June of 2015. Y.N. also informed the detectives that the computer upon which she discovered Maranger viewing child pornography was located in the living room in the residence. Additionally, Y.N. stated that while the computer was owned by Maranger, everyone in the house had access to it. Thereafter, Y.N. permitted Detective Gardner to come inside the house and secure the computer located in the living

room. Detective Gardner entered the residence, disconnected the computer, and carried it outside where she placed it in the backseat of Detective Frisch's cruiser. No search of the computer was conducted at this time.

{¶ 20} Unless a recognized exception applies, the Fourth Amendment to the U.S. Constitution mandates that police obtain a warrant based on probable cause in order to effectuate a lawful search. *State v. Holloway*, 2d Dist. Clark No. 04CA0070, 2006–Ohio–4797, ¶ 15–16, citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Valid consent to search is a recognized exception to the warrant requirement. *State v. Moon*, 2d Dist. Montgomery No. 9288, 1986 WL 2368, *1 (Feb. 14, 1986), citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "A police officer may validly enter and search a home, without a warrant, when the officer has obtained the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a non-present co-occupant." *State v. Keggan*, 2d Dist. Greene No. 2006 CA 9, 2006–Ohio–6663, ¶ 45. (Citations omitted.)

{¶ 21} Proper consent can be given by a third party, but the third-party must possess "common authority over the area sought to be searched." *State v. Miller*, 117 Ohio App.3d 750, 759, 691 N.E.2d 703 (11th Dist.1997), citing *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). (Other citation omitted.) "Common authority rests 'on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.' " *State v. Pugh*, 2d Dist. Montgomery No. 25223, 2013–Ohio–1238, ¶ 9, citing

*Matlock* at 171, 94 S.Ct. 988, 39 L.Ed.2d 242, fn. 7. "[T]he United States Supreme Court has applied a 'reasonable belief' standard for determining whether a police officer's reliance upon the consent of a third party was proper under particular circumstances." *Miller* at 759, 691 N.E.2d 703. "That is, before a trial court can conclude that a warrantless search was valid on the basis of a third-party consent, it must find that the facts of the case supported a reasonable belief on the part of the police officer that the third party had the authority to consent to the search." *Id.*

{¶ 22} The trial court found that a valid consent to search was given by Y.N in this case. Specifically, the trial court found, and we agree, that Y.N. was authorized to permit the detectives to enter the residence because she stated that she lived there with her daughter at the time, whereby she appeared to have authority over the premises. Furthermore, the computer was located in the living room, a common area of the house, and Y.N. informed the detectives that everyone in the house had access to the computer. We also note that the computer was not searched at the time it was removed from the house. Rather, it was secured by the detectives until such time that a warrant could be issued to search the computer.

{¶ 23} Upon review, we conclude that even assuming Y.N. did not have actual authority to consent to Detective Gardner entering the residence and removing the computer, the trial court did not err in finding that she possessed the apparent authority to do so. As previously stated, a warrantless entry is valid if the police reasonably believe, although incorrectly, that the person giving consent possessed common authority over the premises. Furthermore, the computer's contents were not searched until after a warrant was obtained to do so. Accordingly, Maranger's first argument is without merit.

**B. Warrant Issued on September 22, 2015 to Search Maranger's Residence**

{¶ 24} In his second argument, Maranger argues that the trial court erred when it overruled his motion to suppress the evidence obtained from his Wisconsin residence on September 23, 2015. Specifically, Maranger challenges the search warrant authorizing the search, claiming that the warrant was not supported by probable cause, that there was no connection to Maranger's residence and the crimes he committed in Ohio, that it contained stale information, and that it was overbroad. We note that the items that were ultimately seized from Maranger's residence included the following: 1) an invoice from General Heating and AC for Bob Maranger; 2) Canon Digital Camera; 3) Nikon Digital Camera; 4) Canon SD Memory Card – 32 MG; 5) Personal Maintenance Contract; 6) three VHS tapes; 7) ten Maxell 3.5 GB floppy disks; 8) drug paraphernalia; 9) seven DVDs, one CDR – pornography tapes; 10) 2 pieces of paper containing pornography websites; 11) three metal pipes, one glass pipe; 12) twenty-seven miscellaneous condoms; 13) tube of Astroglide; 14) small Ziploc bag containing a green leafy substance; and 15) old movie film reel.

{¶ 25} The Fourth Amendment to the U.S. Constitution and Ohio Constitution, Article I, Section 14 provide that search warrants may only be issued upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and/or things to be seized. *See also State v. Jones*, 143 Ohio St.3d 266, 2015–Ohio–483, 37 N.E.3d 123, ¶ 11.

{¶ 26} We begin our analysis with the governing legal standards. Under Crim.R. 41, a request for a search warrant requires a sworn affidavit "establishing the grounds for issuing the warrant." Crim.R. 41(C)(1). The judge may issue a search warrant if the

judge finds, based on the information in the affidavit, that "probable cause" for the search exists. Crim.R. 41(C)(2). "The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." *Id.* "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 27} "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed." *Gates* at 238–239, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *State v. Castagnola*, 145 Ohio St.3d 1, 2015–Ohio–1565, 46 N.E.3d 638, ¶ 35. Ordinarily, "a probable cause inquiry must be confined to the four corners of the affidavit." *State v. Klosterman*, 114 Ohio App.3d 327, 333, 683 N.E.2d 100 (2d Dist.1996). In reviewing whether a search warrant has been issued upon probable cause, courts must examine the totality of the circumstances. *Jones*, 143 Ohio St.3d 266, 2015–Ohio–483, 37 N.E.3d 123, at ¶ 15.

{¶ 28} Trial courts and appellate courts "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area

should be resolved in favor of upholding the warrant." *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus; *Jones*, 143 Ohio St.3d 266, 2015–Ohio–483, 37 N.E.3d 123, at ¶ 14.

{¶ 29} Finally, we note that the "Supreme Court of the United States held that evidence obtained in violation of the Fourth Amendment by an officer acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded from state criminal prosecution. (Citations omitted)." *State v. Arno*ld, 2d Dist. Clark No. 2016 CA 20, 2017–Ohio–559, ¶ 48.

{¶ 30} On September 22, 2015, Detective Frisch was issued a warrant to search the residence located in Wisconsin, owned by Maranger.   The affidavit states as follows:

Your affiant and Detective Gardner made contact with [Y.N.] on Monday, August 10 at her residence.   [Y.N.] reported she and her daughter with the initials J.C.F.N. live with Maranger at * * * Drive in the Town of * * *.   [Y.N.] reported she met Maranger 5 or 6 years ago.   [Y.N] reported she has kept a relationship with Maranger since meeting him.   [Y.N.] reported around June of 2014 she moved into Maranger's residence on * * * Dr. [Y.N.] reported from June of 2014 till [sic] June of 2015 her daughter (who is under the age of 18 and has the initials J.C.F.N.) did not live at Maranger's residence fulltime.   [Y.N.] reported in June of 2015 she moved J.C.F.N. into Maranger's residence full time and at the same time Maranger would watch J.C.F.N. unsupervised.

[Y.N.] told your affiant she was not aware of any sexual contact between Maranger and J.C.F.N. prior to the incident in Ohio.   [Y.N.] told

your affiant she was aware Maranger was a registered sex offender, but had received treatment as a result of a conviction. [Y.N.] informed your affiant shortly before leaving on their trip that ended in Ohio she observed Maranger viewing child pornography on his computer. [Y.N.] informed your affiant that Maranger owns the computer, but it is in a common area of the residence and that Maranger, [Y.N.] and J.C.F.N. can access the computer. On 08-10-15 your affiant and Detective Gardner seized the computer in question and secured it into evidence. A separate warrant for the search of the computer that was seized on 08-10-15 will be requested.

Your affiant told [Y.N.] not to question J.C.F.N. about any sexual abuse, but if J.C.F.N. discloses any sexual abuse, [Y.N.] should take note of it and contact your affiant or Detective Sink.

On 08-26-15 your affiant conducted a second interview with [Y.N.]. [Y.N.] informed your affiant, [sic] J.C.F.N. drew a picture of her giving oral sex to Maranger. [Y.N.] sent a copy of the drawing J.C.F.N. drew and a list of what J.C.F.N. had disclosed to Detective Sink. J.C.F.N. also disclosed to [Y.N.], [sic] Maranger would touch her while in a truck. J.C.F.N. disclosed to [Y.N.], Maranger would perform oral sex on her. J.C.F.N. also disclosed to [Y.N.], Maranger made her watch him and a blond woman have sex. J.C.F.N. also disclosed to [Y.N.], Maranger showed his genitals to her in the basement. [Y.N.] also stated that J.C.F.N. told her of a box of toys that Maranger had stored in the attic or garage rafters. [Y.N.] believes these toys and games are of a sexual nature and [Y.N.] was not aware of

these items until J.C.F.N. described the box, and [Y.N.] denied any prior consensual use of them with Maranger.

On 08-26-15 your affiant contacted Detective Sink and request[ed] he forward a copy of the drawing J.C.F.N. drew and the list [Y.N.] had completed of what J.C.F.N. disclos[ed]. On 08-27-15 Detective Sink forwarded an email to your affiant, he received from [Y.N.] that contained the image J.C.F.N. drew of her performing oral sex on Maranger and a list of J.C.F.N. had disclosed to [Y.N.].

On 09-09-15 a forensic interview was conducted at Safe Harbor with J.C.F.N. During the interview J.C.F.N. disclosed multiple acts of sexual assault, viewing sexual activity, and viewing pornography. The disclosures included that Maranger made her perform oral sex on him and he performed oral sex on J.C.F.N. J.C.F.N. also disclosed Maranger tied her up with ropes to a chair and forced her to watch Maranger have sex with an adult female. J.C.F.N. also disclosed Maranger showed her people having sex on the television and the computer.

During the forensic interview, J.C.F.N. described the sexual assaults [that] occurred in Maranger's residence, in his bedroom. One assault was described as occurring in Maranger's truck after attending the Dane County Fair. J.C.F.N. also described being transported to Lake Mills and being hoisted up a ladder, looking through a window and viewing two adults having sex in a room. J.C.F.N. stated that Maranger held her head steady so she could not look away, and pried her eyes open to make her view the

people in the room. J.C.F.N. stated on one occasion, Maranger tied her with ropes so that she could not get away and she was present in Maranger's bedroom when he had sex with an adult female. J.C.F.N. also described Maranger showed her pornography featuring adults on his television and his computer.

{¶ 31} "We have recognized in previous cases that images of child pornography are likely to be hoarded by persons interested in those materials, to be viewed in the privacy of their own homes, and that because of their illegality and the severe social stigma the possession of such images carries, collectors will want to secrete them in secure places, like a private residence, and that pedophiles, child molesters, and child-pornography collectors tend to maintain their materials for significant periods of time." *State v. Bennett*, 192 Ohio App.3d 608, 2011-Ohio-961, 949 N.E.2d 1064, ¶ 36 (2d Dist.); *State v. Marler*, 2d Dist. Clark No. 2007 CA 8, 2009-Ohio-2423, at ¶ 40.

{¶ 32} In the instant case, we agree with the trial court that the information included by Detective Frisch in the residential search warrant provided a "fair probability that contraband or evidence of a crime" would be discovered in Maranger's home. On two separate occasions, Y.N. stated that she observed Maranger viewing child pornography on the computer shared by everyone in the house. The affidavit also contained several disclosures from J.C.F.N. regarding the sexual abuse she suffered from Maranger, to wit: 1) J.C.F.N. stated that Maranger made her watch child pornography on the television and the computer located in the residence; 2) she stated that Maranger had sexually assaulted her in his bedroom in the house; 3) she stated that Maranger tied her to a chair with ropes and forced her to watch him have sex with an adult female in his bedroom;

and 4) she stated that Maranger hid a box of toys, presumably sexual in nature, in the rafters in his garage.

{¶ 33} There was in this case a nexus between the property to be seized, downloaded images of child pornography, and the place to be searched - Maranger's current residence in Wisconsin – and therefore a "fair probability" that child pornography would be found in his residence. An absolute certainty that the material would be at defendant's residence is not required. *George*, 45 Ohio St.3d 325, 544 N.E.2d 640. Because the search warrant that produced the evidence that Maranger moved to suppress is supported by probable cause, we need not determine whether the good-faith exception applies.

{¶ 34} Additionally, the evidence obtained from the search warrant issued and executed in Wisconsin is admissible in Maranger's Ohio case because it can be used to support his convictions for the sexually violent predator specifications. Here, the trial court found Maranger guilty of the sexually violent predator specification as set forth in R.C. 2971.01(H)(1) , which defines a "sexually violent predator" as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(2)(a)-(f) lists the factors that may be considered by the factfinder as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses. It provides:

(a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with

the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.

(b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.

(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.

(d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.

(e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.

(f) *Any other relevant evidence.*

{¶ 35} Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence of sexually violent offenses committed against J.C.F.N. and/or other minors in Wisconsin by Maranger at his residence is clearly relevant to his conviction for the sexually violent predator specifications with which he was charged in Ohio.

{¶ 36} Furthermore, the information contained in the affidavit was not stale. An affidavit in support of a search warrant must present timely information and include facts so closely related to the time of issuing the warrant as to justify a finding of probable cause at that time. *State v. Jones*, 72 Ohio App.3d 522, 526, 595 N.E.2d 485 (6th Dist.1991). No arbitrary time limit dictates when information becomes "stale." *Id.* The test is whether

the alleged facts justify the conclusion that certain contraband remains on the premises to be searched. *State v. Floyd*, 2d Dist. Darke No. 1389, 1996 WL 139787 (Mar. 29, 1996). If a substantial period of time has elapsed between the commission of the crime and the search, the affidavit must contain facts that would lead the judge to believe that the evidence or contraband is still on the premises before the judge may issue a warrant. *State v. Yanowitz*, 67 Ohio App.2d 141, 147, 426 N.E.2d 190 (8th Dist.1980).

**{¶ 37}** "Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident." *State v. Mays*, 2d Dist. Montgomery No. 23986, 2011–Ohio–2684, ¶ 22, citing *State v. Ingold*, 10th Dist. Franklin No. 07AP–648, 2008–Ohio–2303, ¶ 23.

**{¶ 38}** The record establishes that J.C.F.N. moved into Maranger's residence in June of 2015. On August 7, 2015, Maranger was arrested in Ohio for raping J.C.F.N. On August 10, 2015, Y.N. informed Wisconsin Detectives Frisch and Gardner that on two occasions she had observed Maranger viewing child pornography on his computer in the residence that they shared. On August 26, 2015, Y.N. informed Detective Frisch that J.C.F.N. had disclosed that Maranger had sexually abused her. At a forensic interview on September 9, 2015, J.C.F.N. disclosed multiple instances of sexual abuse committed by Maranger at his residence.

**{¶ 39}** Although the sexual abuse in Maranger's home occurred between June and August of 2015, J.C.F.N. did not disclose the abuse to Y.N. until after Maranger's arrest in Ohio. Furthermore, it was not until the forensic interview conducted on September 9,

2015, that J.C.F.N. disclosed the full extent of the sexual abuse she had been subject to from Maranger in his residence. Shortly thereafter on September 22, 2015, Detective Frisch applied for a warrant to search Maranger's residence where several instances of sexual abuse were alleged to have occurred. In light of the ongoing nature of the sexual abuse committed by Maranger against J.C.F.N., the various types of abuse that occurred, and the fact that less than four months passed between the occurrence of the offenses and the issuance of the search warrant, we cannot find that the information contained in the affidavit was stale.

{¶ 40} Lastly, Maranger argues that the search warrant issued for his residence on September 22, 2015, lacks particularity, and only contains broad categories of the materials to be seized.

{¶ 41} Under the Fourth Amendment to the United States Constitution, no warrants shall issue except those " * * * particularly describing * * * the things to be seized." Section 14, Article I of the Ohio Constitution is nearly identical to the Fourth Amendment in its language, and "its protections are coextensive with its federal counterpart." *State v. Kinney*, 83 Ohio St.3d 85, 87, 698 N.E.2d 49 (1998) (citation omitted); *State v. Hale*, 2d Dist. Montgomery No. 23582, 2010-Ohio-2389, ¶ 42.

{¶ 42} "In search and seizure cases where a warrant is involved, the requisite specificity necessary therein usually varies with the nature of the items to be seized. Where, as here, the items are evidence or instrumentalities of a crime, it appears that the key inquiry is whether the warrants could reasonably have described the items more precisely than they did." *State v. Benner*, 40 Ohio St.3d 301, 307, 533 N.E.2d 701 (1988), citing LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* 104–105,

Section 4.6(d) (1978), and *abrogated on other grounds* by *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Catchall provisions of warrants also " 'must be read in conjunction with the list of particularly described items which preceded it pertaining to the crimes alleged.' " *State v. Dillard*, 173 Ohio App.3d 373, 2007–Ohio–5651, 878 N.E.2d 694, at ¶ 43 (citation omitted).

{¶ 43} In the instant case, the search warrant indicates that probable cause exists to believe that the following offenses occurred in Dane County, Wisconsin, to wit: "First Degree Sexual Assault of a Child, Engaging in Repeated Acts of Sexual Assault of the Same Child, Causing a Child to View or Listen to Sexual Activity, [and] Exposing a Child to Harmful Material committed in violation of Section(s) 943.32(1)(a), 948.205(1)(a), [and] 948.11(1) of the Wisconsin Statutes ***."

{¶ 44} The search warrant further states that the items to be seized from Maranger's residence are the following:

[1] Any and all ropes that could be used to restrain an individual.

[2] Any and all pornographic material including but not limited to DVDs, CDs, photographs, and periodicals.

[3] Any and all devices or products of a sexual nature, including but not limited to sex toys, costumes, and games[.]

[4] Any and all computers, cellphones, televisions that can connect to the internet, gaming systems that can connect to the internet, cameras and the contents of within the internal memory of the computer, phone, televisions, gaming system and cameras in question including but not limited to photographs, internet/website search history, contained within the internal

memory of the electronics in question.

[5] Also, documents tending to identify the occupant in control of said premises and vehicles, including but not limited to, lease agreements, utility bills, records of financial transactions, vehicle repair bills, personal correspondence, photographs, keys, driver's license, registration and title information.

[6] Any writings, journals, or any other notations which may indicate addresses or names of individuals residing in or near the Lake Mills, WI area.

{¶ 45} "Not all broad and generic descriptions of things to be seized are invalid under the Fourth Amendment.   A broad and generic description is valid if it 'is as specific as circumstances and nature of the activity under investigation permit' and enables the searchers to identify what they are authorized to seize." *Hale* at ¶ 71, citing *State v. Armstead*, 9th Dist. Medina No. 06CA0050–M, 2007–Ohio–1898, at ¶ 10.

{¶ 46} Upon review, we conclude that the warrant to search Maranger's residence was neither overbroad nor lacked specificity regarding the items to be seized as they related to the child sex offenses for which he was under investigation in Wisconsin, as well as the sexually violent predator specifications in Ohio.   The search warrant identified ropes that could be used to restrain an individual (based upon J.C.F.N.'s disclosure that Maranger tied her to a chair with ropes and forced her to watch him have sex with an adult female in his bedroom).   The search warrant also described "all pornographic material including but not limited to DVDs, CDs, photographs, and periodicals" (based upon Y.N.'s disclosure that she observed Maranger viewing child pornography on the

computer shared by everyone in the house, and more importantly, J.C.F.N.'s disclosure that Maranger made her watch pornography on the television and the computer located in the residence). The search also specifically identified "all devices or products of a sexual nature, including but not limited to sex toys, costumes, and games" (based upon J.C.F.N.'s disclosure that Maranger hid a box of toys, presumably sexual in nature, in the rafters in his garage). Finally, the search warrant described "[a]ny writings, journals, or any other notations which may indicate addresses or names of individuals residing in or near the Lake Mills, WI area" (based upon J.C.F.N.'s disclosure that Maranger transported her to a residence in the Lake Mills area and forced her to watch two unidentified adults engage in sexual relations).

**{¶ 47}** Under the circumstances, the search warrant could not reasonably have described the items more precisely. The search was limited to items related to the specified offenses, which were related solely to the child sex offenses for which he was under investigation in Wisconsin, as well as the sexually violent predator specifications in Ohio. The warrant did not authorize intrusion into unrelated matters. Therefore, we conclude that the warrant issued on September 22, 2015, to search Maranger's residence is sufficiently particular.

**C. Warrant Issued on November 10, 2015 to Search Maranger's Pickup Truck**

**{¶ 48}** Here, Maranger argues that the warrant authorizing the search of his pickup truck was not supported by probable cause, there was no connection to Maranger's truck and the crimes he committed in Ohio, it contained stale information, and it was overbroad. We note that Detective Frisch included most, if not all, of the same information in the affidavit for the search warrant of Maranger's truck as he did in the affidavit for the search

warrant for Maranger's residence.

{¶ 49} In the instant case, J.C.F.N. disclosed that Maranger sexually assaulted her multiple times in his truck. J.C.F.N. also disclosed that Maranger had transported her in his truck to nearby locations in order to force her to watch while unidentified adults engaged in sexual activity. The pickup truck was observed by deputies from the Dane County Sheriff's Office in the driveway when they executed the search warrant for his residence on September 23, 2015. The truck was found to be registered to Maranger. All of this information was included by Detective Frisch in his affidavit in support of the issuance of the warrant to search Maranger's truck. Upon review, we agree with the trial court that the information included by Detective Frisch in the search warrant provided a "fair probability that contraband or evidence of a crime" would be discovered in Maranger's truck.

{¶ 50} As to staleness, although the multiple instances of sexual abuse in Maranger's truck occurred between June and early August of 2015, J.C.F.N. did not disclose the abuse to Y.N. until August 26, 2015. Furthermore, it was not until the forensic interview conducted on September 9, 2015, that J.C.F.N. disclosed the full extent of the sexual abuse she had been subject to from Maranger in his truck. The record establishes that Detective Frisch applied for the warrant to search Maranger's truck on November 10, 2015. In light of the repeated nature of the sexual abuse committed by Maranger against J.C.F.N., the various types of abuse that occurred, and the fact only four months passed between the occurrence of the offenses and the issuance of the truck search warrant, we cannot find that the information contained in the affidavit was stale.

{¶ 51} Furthermore, the evidence obtained from the search warrant issued and

executed in Wisconsin is admissible in Maranger's Ohio case because it can be used to support his convictions for the sexually violent predator specifications. As previously stated, pursuant to R.C. 2971.01(H)(2)(f), evidence of sexually violent offenses committed against J.C.F.N. in Wisconsin by Maranger in his truck are clearly relevant to his conviction for the sexually violent predator specifications with which he was charged in Ohio. *Id.*

{¶ 52} Lastly, we conclude that the warrant to search Maranger's truck was neither overbroad nor lacked specificity regarding the evidence to be seized as they related to the child sex offenses for which he was under investigation in Wisconsin, as well as the sexually violent predator specifications in Ohio. The search warrant could not reasonably have described the evidence more precisely, and the search was limited to evidence related to the specified offenses which occurred in his truck. Therefore, we conclude that the warrant issued on November 10, 2015, to search Maranger's truck is sufficiently particular.

## D. Warrant Issued on November 12, 2015, to Search Maranger's 3-inch x 5-inch Ring Binder

{¶ 53} Maranger argues that the warrant authorizing the search of his 3 x 5 binder was not supported by probable cause, there was no connection to the binder and the crimes he committed in Ohio, it contained stale information, and it was overbroad. Again, we note that Detective Frisch included most, if not all, of the same information in the affidavit for the search warrant of Maranger's binder as he did in the affidavit for the search warrant for Maranger's residence and his truck.

{¶ 54} In the instant case, the record establishes that upon execution of the search

warrant, the items obtained from the binder included fifteen scraps of paper with names and phone numbers written on them, as well as thirteen additional pages labeled A through Z containing names, numbers, and addresses written on the front and back of some of the pages. It is undisputed that although the trial court overruled Maranger's motion to suppress as it related to the 3 x 5 binder, none of the physical evidence itself from the binder was introduced at his trial for the two sexually violent predator specifications.

{¶ 55} In *State v. Richardson*, 2d Dist. Greene No. 08CA0077, 2009-Ohio-6018, we stated that the "Defendant's reasonable expectation of privacy in the premises notwithstanding, if his conviction was not based on any evidence police illegally seized from his home, any invalidity in the warrant is moot, and any error in denying Defendant's motion to suppress evidence that was seized was harmless." *Id.* at ¶ 13. Therefore, because Maranger's convictions for the specifications was not based upon any of the evidence seized from his binder, any alleged invalidity in the warrant is moot. Accordingly, any error relating to the trial court's denial of Maranger's motion to suppress evidence taken from the binder is moot, and need not be addressed. *Id.*

**E. Warrant Issued on May 4, 2016, to Search Maranger's LG Cellphone**

{¶ 56} In this section, Maranger argues that the warrant authorizing the search of his LG cellphone was not supported by probable cause, there was no connection to the cellphone and the crimes he committed in Ohio, it contained stale information, and it was overbroad. Again, we note that Detective Frisch included most, if not all, of the same information in the affidavit for the search warrant of Maranger's cellphone as he did in the affidavit for the search warrant for Maranger's residence and his truck.

{¶ 57} The record establishes that on May 4, 2016, Detective Sink applied for a search warrant for Maranger's cellphone that was taken from him when he was arrested in Butler Township on August 7, 2015. Thereafter, Detective Sink executed the search warrant and took possession of the cellphone, which he immediately turned over to Detective Patty from Wisconsin. Upon returning to Wisconsin, Detective Patty testified that she obtained another warrant to search the contents of the cellphone. However, at the time of the suppression hearing on August 25, 2016, the Wisconsin laboratory where the cellphone had been sent had not yet been processed and its contents searched.

{¶ 58} It is undisputed that none of the contents of Maranger's cellphone was introduced at his bench trial for the specifications. Significantly, it is unknown if any evidence, relevant or otherwise was removed from the cellphone. Accordingly, it is clear from the record that Maranger's convictions for the sexually violent predator specifications were not in any way based upon the evidence, if any, seized from his cellphone. Therefore, any invalidity in the warrant issued to Detective Sink to take possession of the cellphone is moot, and any error in denying Maranger's motion to suppress is harmless. *Richardson* at ¶ 13.

### F. Statements Made by Maranger to Detective Patty and Wisconsin Parole Officers

{¶ 59} Here, Maranger argues that the trial court erred when it overruled his motion to suppress as it related to statements that he made at separate times to Detective Patty and his parole officers in Wisconsin.

### Det. Patty

{¶ 60} During the bench trial, Detective Patty testified that when she traveled to

Ohio on May 4, 2016, she attempted to interview Maranger and obtain a statement from him regarding any offenses he committed in Wisconsin. At the time, Maranger was still in the custody of the Montgomery County Sheriff awaiting trial for the offenses committed in Butler Township on August 7, 2015. Detective Patty's entire interview with Maranger was recorded on audio and video.

{¶ 61} At the beginning of the interview, Detective Patty reviewed Maranger's constitutional rights with him. Thereafter, Detective Patty asked Maranger several questions regarding offenses he allegedly committed in Wisconsin. It is undisputed, however, that Maranger made no statements or admissions that were used against him at trial. Thus, Maranger's convictions for the sexually violent predator specifications were not in any way based upon any statements he made to Detective Patty during the interview at the Montgomery County Jail on May 4, 2016. Accordingly, any issues regarding the propriety of Detective Patty's interview with Maranger are moot, and any error in denying Maranger's motion to suppress his statements is harmless. *See Richardson* at ¶ 13.

### Parole Officers

{¶ 62} Next, Maranger contends that the trial court erred when it overruled his motion to suppress statements he made to his Wisconsin parole officers in August of 2004 because he alleges that they told him that anything he told them would not be used against him in any court proceeding.

{¶ 63} While under the supervision of the Wisconsin Department of Corrections, Maranger provided his parole officers with several written statements during court ordered sex offender treatment stemming from an earlier conviction and sentence. As a parolee

under supervision, Maranger was required to provide true and correct information regarding any violations he may have committed during his treatment. While on supervision in Wisconsin, Maranger provided written statements wherein he admitted having sexual intercourse with C.M. and E.L., having sex with a prostitute, and sending sexually explicit material to another sex offender in 2001. Maranger also made oral statements to his Wisconsin parole officer, Christopher Nolet, regarding the information he provided in the written statements. Nolet testified that Maranger made the incriminating oral statements prior to providing his written statements. At the top of the statements, it states that any failure to be truthful and accurate is a violation for which his parole could be revoked. The forms also state that the information could not be used against him in criminal proceedings. Nolet testified that while Maranger's parole was revoked because of his supervision violations, he was never charged with any additional criminal offenses based upon his admissions in the written statements.

{¶ 64} "The right to [*Miranda*] warnings is grounded in the Fifth Amendment's prohibition against compelled self-incrimination." *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 16 (2d Dist.), citing *Moran v. Burbine*, 475 U.S. 412, 420, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). "The procedural safeguards prescribed by *Miranda* apply only when persons are subjected to 'custodial interrogation.' " *State v. Thomas*, 2d Dist. Montgomery No. 20643, 2005-Ohio-3064, ¶ 27, citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶ 65} *Miranda* defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* at 444, 86 S.Ct. 1602, 16 L.Ed.2d

694. "[T]he ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

{¶ 66} "In order to determine whether a person is in custody for purposes of receiving *Miranda* warnings, courts must first inquire into the circumstances surrounding the questioning and, second, given those circumstances, determine whether a reasonable person would have felt that he or she was not at liberty to terminate the interview and leave." *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 27, citing *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). Therefore, "the test for custody is an objective test." *State v. Chenoweth*, 2d Dist. Miami No. 2010 CA 14, 2011-Ohio-1276, ¶ 8, citing *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). "The subjective views of the interviewing officer and the suspect are immaterial to the determination of whether a custodial interrogation was conducted." (Citations omitted.) *State v. Earnest*, 2d Dist. Montgomery No. 26646, 2015-Ohio-3913, ¶ 22. *Accord State v. Gray*, 2d Dist. Montgomery No. 26139, 2016-Ohio-1419, ¶ 74.

{¶ 67} In the instant case, we agree with the trial court and find that because Maranger's written and oral statements were obtained as a result of and during his sex offender treatment, they were *not* the result of a custodial interrogation. Therefore, it was not necessary for Nolet or any of the other parole officers to advise Maranger of his *Miranda* rights. Although his parole was ultimately revoked in Wisconsin for the violations, Maranger was not charged with any additional crimes in Wisconsin based upon

the admissions he made during the sex offender treatment.

**{¶ 68}** However, even if the trial court erred when it overruled Maranger's motion to suppress as it related to his written statements, we conclude that error did not affect the outcome of the trial.   A conviction will not be reversed when other evidence adduced at a defendant's trial is "so overwhelming, and the prejudicial effect of the [subject statement] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *State v. Moritz*, 63 Ohio St.2d 150, 156, 407 N.E.2d 1268 (1980), citing *Schneble v. Florida*, 405 U.S. 427, 430, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

**{¶ 69}** In finding Maranger guilty of both sexually violent predator specifications, the trial court stated that the State had proven beyond a reasonable doubt that Maranger had "been convicted two or more times in separate criminal actions of a sexually-oriented offense or child-victim oriented offense."   The trial court also found that Maranger had a documented history dating back to his childhood in which he exhibited sexually deviant behavior.   The trial court found that the State had adduced evidence which established Maranger chronically commits offenses with a sexual motivation.   Maranger was further found to be in possession of over 200 photos depicting child pornography stored in his computer.   Accordingly, we find that even if the admission of Maranger's written statements was error, it was harmless and did not ultimately affect the outcome of the trial.

## G. Warrant Issued on November 12, 2015, to Search Maranger's Desktop Computer

**{¶ 70}** In his final argument, Maranger argues that the trial court erred when it

overruled his motion to suppress as it related to the search of his computer in which approximately 200 photographs of child pornography were discovered. Specifically, Maranger argues that the State failed to establish a nexus between the offenses committed in Ohio and the computer, the search warrant was overbroad and lacked the required specificity, the chain of evidence regarding the computer was tainted by the police, and the information on the computer was stale.

{¶ 71} First, we note that the evidence obtained from the search warrant issued and executed in Wisconsin to search Maranger's computer is relevant in his Ohio case because it can be used to support his convictions for the sexually violent predator specifications. Here, the trial court found Maranger guilty of the sexually violent predator specification as set forth in R.C. 2971.01(H)(1), which defines a "sexually violent predator" as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." Pursuant to R.C. 2971.01(H)(2)(f), evidence consisting of images of child pornography found in his computer is clearly relevant to his conviction for the sexually violent predator specifications with which he was charged in Ohio. *Id.*

{¶ 72} Furthermore, we find that the search warrant was not overbroad. Specifically, the search warrant authorized the police to search for the following:

> [A]ny and all files on the computers or external media drives as described herein that may contain any of the following: images of individuals under the age of 18 that may be engaged in sexual activity or in various stages of undress, including but not limited to images, movies or other graphics, including images of J.C.F.N., a juvenile under the age of 18; communication

files, including but not limited to chat logs, e-mail, text messages and internet search history since June 2015; any reference to online storage accounts[.]

**{¶ 73}** In his affidavit in support of the search warrant, Detective Frisch stated that based upon his training and experience, "images of pornography, child pornography as well as any general digital content can be accessed and saved on many kinds of devices," including computers. Detective Frisch further stated that "individuals who sexually molest children may collect child pornography, which is commonly viewed, downloaded and traded online." Additionally, on two separate occasions, Y.N. stated that she observed Maranger viewing child pornography on the computer shared by everyone in the house. J.C.F.N. also disclosed that Maranger made her watch child pornography on the computer located in the residence. Moreover, the warrant only authorized the search of "chat logs, e-mail, text messages and internet search history since June 2015" when J.C.F.N. came to live in Maranger's home full-time. Therefore, we conclude that the warrant to search Maranger's computer was neither overbroad nor lacked specificity regarding the items to be seized as they related to the child sex offenses for which he was under investigation in Wisconsin, as well as the sexually violent predator specifications in Ohio.

**{¶ 74}** Next, Maranger argues that the evidence seized from the computer should have been suppressed because the chain of evidence was broken when Detective Frisch, after retrieving it from the property room, placed the computer in his private office for three days before it was transferred to the Wisconsin State Crime Lab to be processed.

"The State has the burden of establishing the chain of custody of a specific

piece of evidence. *State v. Barzacchini* (1994), 96 Ohio App.3d 440, 458, 645 N.E.2d 137. 'The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' Evid.R. 901(A). In order to meet its burden in establishing the chain of evidence, 'the state need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur.' *State v. Qualls* (June 6, 1997), Clark App. No. 96 CA 68 [1997 WL 311634, *5]. Breaks in the chain of custody go to the weight afforded the evidence-not the admissibility of the evidence. *State v. Jones* (Mar. 31, 2000), Miami App. No. 99 CA 38 [2000 WL 331793, *2]." *Rajchel*, supra, at ¶ 21.

*State v. Griffin*, 2d Dist. Montgomery No. 20681, 2005-Ohio-3698, ¶ 56, citing *State v. Rajchel*, 2d Dist. Montgomery No. 19633, 2003-Ohio-3975, ¶ 21.

**{¶ 75}** Detective Frisch testified that the computer was removed from Maranger's residence on August 10, 2015, and taken to the property room on the same day. As previously stated, Detective Frisch obtained a search warrant for Maranger's computer on November 12, 2015. Thereafter, on Friday, November 13, 2015, Detective Frisch retrieved the computer from the property room and placed it in his locked private office until he could schedule a time to submit it to the crime lab to be processed. Detective Frisch testified that he was not able to schedule a time to drop off the computer at the crime lab until November 17, 2015. Detective Frisch testified that he kept his office locked when he was not there. The crime lab kept the computer from November 17, 2015, until June 17, 2016, when it was returned to Detective Frisch. In our judgment,

Maranger's computer and its contents were properly secured by the State, a chain of custody was established, and the trial court was correct to uphold the warrant and evaluate the weight of evidence to give to the computer images.

{¶ 76} Lastly, Maranger argues that the information in the search warrant for the computer was stale. The record establishes that J.C.F.N. moved into Maranger's residence in June of 2015. On August 7, 2015, Maranger was arrested in Ohio for raping J.C.F.N. On August 10, 2015, Y.N. informed Wisconsin Detectives Frisch and Gardner that on two occasions she had observed Maranger viewing child pornography on his computer in the residence that they shared. The computer, when initially removed from Maranger's residence by Detective Gardner, was not searched. Thereafter, on August 26, 2015, Y.N. informed Detective Frisch that J.C.F.N. had disclosed that Maranger had sexually abused her in Wisconsin as well as Ohio. At a forensic interview on September 9, 2015, J.C.F.N. disclosed multiple instances of sexual abuse committed by Maranger at his residence which included direct reference to computer images.

{¶ 77} On September 22, 2015, Detective Frisch applied for a warrant to search Maranger's residence where sexual abuse was alleged to have occurred. Specifically, J.C.F.N. disclosed that Maranger made her view pornography on the television and the computer. Thereafter, on November 12, 2015, Detective Frisch applied for a warrant to specifically search the contents of Maranger's already seized computer. Shortly thereafter on November 17, 2015, Detective Frisch turned the computer over to the crime lab so that it could be analyzed and processed. The fact that the crime lab did not return the computer to Detective Frisch until June 17, 2016, has no bearing upon whether the information in the affidavit for the search warrant was stale. Based upon the ongoing

nature of the sexual abuse committed by Maranger against J.C.F.N. and the fact that less than four months passed between the occurrence of the offenses and the issuance of the search warrant, we cannot find that the information contained in the affidavit was stale.

{¶ 78} Thus, we find that the trial court did not err when it overruled Maranger's motion to suppress in its entirety.

{¶ 79} Maranger's sole assignment of error is overruled.

{¶ 80} Maranger's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J., and TUCKER, J. concur.


Copies mailed to:

Heather Jans
Robert Brenner
Hon. Dennis J. Adkins