[Cite as *State v. Laughbaum*, 2026-Ohio-1783.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
ASHLAND COUNTY, OHIO

STATE OF OHIO

    Plaintiff – Appellee

-vs-

STEPHEN LAUGHBAUM

    Defendant - Appellant

Case No. 25-COA-028

Opinion And Judgment Entry

Appeal from the Ashland County Court of Common Pleas, Case No. 24-CRI-066

Judgment: Affirmed

Date of Judgment Entry: May 14, 2026

BEFORE: Craig R. Baldwin, Kevin W. Popham, and David M. Gormley, Judges

APPEARANCES: Christopher Tunnell (Prosecuting Attorney), James B. Reese, III (Assistant Prosecuting Attorney), for Plaintiff-Appellee; Christopher C. Bazeley, for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}   Appellant Stephen Laughbaum ("Laughbaum") appeals his conviction and sentence following a jury trial in the Court of Common Pleas for Ashland County, Ohio. For the reasons below, we affirm.

**Facts and Procedural History**

{¶2}   On February 9, 2024, Laughbaum was indicted on one count of having weapons while under disability, in violation of R.C. 2923.13, a third-degree felony, and one count of aggravated possession of drugs, in violation of R.C. 2925.11, a fifth-degree felony.

**{¶3}** These charges stem from events occurring on April 3, 2022, on which Ashland County Sheriff's deputies responded to a trespassing complaint at a rental property owned by Laughbaum's mother. Upon arrival, deputies encountered Laughbaum and determined he had an active arrest warrant from Summit County, Ohio. A pat-down search incident to arrest yielded, in Laughbaum's left jeans pocket, a clear container holding a crystalline powder. Following his removal from the scene, deputies conducted a consent search of the property and discovered a 9mm handgun concealed in a heating vent. Subsequent testing confirmed the substance recovered from Laughbaum was dimethyltryptamine (DMT), a Schedule I controlled substance.

**{¶4}** On April 15, 2024, the case proceeded to arraignment. (Magistrate's Order, Apr. 15, 2024.)[1] During arraignment, Laughbaum was unresponsive to both the trial court and counsel. (Initial Appearance Tr. 3-4.) In response, and at the State's request, the trial court read the indictment into the record and entered not guilty pleas on Laughbaum's behalf. (*Id*. at 4-7.) Given the circumstances, the court ordered a competency evaluation and stayed the proceedings. (*Id*. at 4, 7; Judgment Entry, Apr. 18, 2024.)

**{¶5}** Following a May 4, 2024, competency hearing, the trial court determined that Laughbaum was competent to stand trial. (Judgment Entry, July 11, 2024.)

**{¶6}** With the matter returned to active status, on July 23, 2024, counsel for Laughbaum moved to withdraw. On July 25, 2024, the trial court granted the motion, while noting that the previously scheduled August 13, 2024, trial date remained in place. That same day - July 23, 2024 - newly appointed counsel entered an appearance, moved

---

[1] We note a discrepancy in the record. The transcript of Laughbaum's initial appearance lists April 17, 2024, as the date for Laughbaum's initial appearance, while the Magistrate's Order lists April 15, 2024.

for a trial continuance, and filed a demand for discovery. The trial court granted the continuance and reset the trial for November 12, 2024. (Judgment Entry, July 29, 2024.)

{¶7} As the rescheduled trial date approached, the court again continued the matter. Specifically, by entry filed November 8, 2024, the trial court reset trial for January 28, 2025.

{¶8} The proceedings were further delayed when, on December 10, 2024, the trial court granted a second motion for counsel to withdraw and appointed new counsel to represent Laughbaum. The trial court tolled the time for trial ["speedy trial"] (R.C. 2945.71) pursuant to R.C. 2945.72(H).

{¶9} On January 14, 2025, newly appointed counsel moved to continue the January 28th trial date and filed a motion for a bill of particulars and a demand for discovery. The trial court granted the continuance, rescheduled trial for May 6, 2025, and again tolled speedy trial time pursuant to R.C. 2945.72(H).

{¶10} On April 29, 2025, defense counsel moved to continue the trial and requested a change of plea hearing. The trial court scheduled the matter for a plea hearing, granted a continuance as necessary, and again tolled speedy trial time during the pendency of the proceedings, citing R.C. 2945.72(H).

{¶11} The change of plea hearing "did not proceed as scheduled", and the trial court set a new trial date of July 1, 2025. (Judgment Entry, May 16, 2025). The trial court again tolled time. *See* R.C. 2945.72(H).

{¶12} On June 30, 2025, the trial court continued the July 1, 2025, trial date - citing an older, previously scheduled criminal case set to go forward on July 1st. The trial court set July 22, 2025, as the new trial date and once again tolled the speedy trial time in Laughbaum's case, citing R.C. 2945.72(H). (Judgment Entry, June 30, 2025).

{¶13} The State subsequently sought a continuance of the July 22, 2025 trial date due to the unavailability of a witness. In a July 16, 2025 entry, the trial court addressed the procedural history and applicable speedy trial provisions under R.C. 2945.71 and R.C. 2945.72. The court found that the witness's unavailability constituted reasonable grounds for a continuance, citing *State v. Saffell*, 35 Ohio St.3d 90 (1998), and further noted a scheduling conflict with an older case. The trial court granted the continuance and tolled speedy trial time.

{¶14} Ultimately, the matter proceeded to trial on September 2, 2025. The jury trial concluded on September 3, 2025, with the jury returning a verdict of not guilty on the charge of having weapons while under disability and guilty on the charge of aggravated possession of drugs.

### Assignments of Error

{¶15} Laughbaum raises two assignments of error for our consideration:

{¶16} "I. THE TRIAL COURT VIOLATED LAUGHBAUM'S RIGHT TO A SPEEDY TRIAL UNDER THE U.S. AND OHIO CONSTITUTIONS BY ALLOWING THIS CASE TO REMAIN PENDING FOR 507 DAYS."

{¶17} "II. LAUGHBAUM'S CONVICTION FOR AGGRAVATED POSSESSION OF DRUGS IS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE."

I.

{¶18} In his first assignment of error, Laughbaum asserts that the trial court violated his right to a speedy trial. We disagree.

### Governing Law

{¶19} The right to a speedy trial is secured by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. *State v.*

*MacDonald*, 48 Ohio St.2d 66, 68 (1976). The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd*, 56 Ohio St.2d 197, 200 (1978).

{¶20}To determine whether there has been a denial of a defendant's constitutional right to a speedy trial, the court considers four factors identified in *Barker v. Wingo,* 407 U.S. 514 (1972): "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant." *State v. Hull*, 2006-Ohio-4252, ¶ 22, citing *Barker* at 530. No single factor controls the analysis, but the length of the delay is important. Post-accusation delay approaching one year is generally found to be presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652 (1992), at fn. 1; *State v. Phelps*, 2022-Ohio-3025, ¶ 37 (5th Dist.).

{¶21}  In *Doggett,* the U.S. Supreme Court explained that a finding that the delay is presumptively prejudicial merely triggers the *Barker* balancing test. *Id.*

**Statutory Framework**

{¶22} Ohio has codified the right to a speedy trial in R.C. 2945.71 et seq., which imposes mandatory time limits within which an accused must be brought to trial. "The statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." *State v. Pachay*, 64 Ohio St.2d 218 (1980), syllabus; *State v. Hughes*, 86 Ohio St.3d 424, 427 (1999). At the same time, the General Assembly has prescribed specific and exclusive tolling events in R.C. 2945.72. Those provisions likewise govern the analysis and must be applied as written. *State v. Ramey*, 2012-Ohio-2904, ¶ 24. In addition to meticulously delineating the tolling events, the General Assembly jealously guarded its judgment

as to the reasonableness of delay by providing that time in which to bring an accused to trial "may be extended only by" the events enumerated in R.C. 2945.72(A) through (I). *See, e.g., State v. Singer,* 50 Ohio St.2d 103, 109 (1977). "These extensions are to be strictly construed, and not liberalized in favor of the state." *Id.* The enumerated extensions include competency evaluations, defense motions, and reasonable continuances. R.C. 2945.72(B), (E), (H).

{¶23} A felony defendant must be brought to trial within 270 days of arrest, subject to the triple-count provision when the defendant is held in jail in lieu of bail. R.C. 2945.71(C)(2)/(E). The clock begins to run on the day after arrest or service of summons. *State v.* Szorady, 2003-Ohio-2716, ¶ 12 (9th Dist.).

{¶24} A defendant bears the initial burden to demonstrate that the statutory time has expired. If met, the burden shifts to the State to establish that sufficient time was tolled. *State v. Butcher*, 27 Ohio St.3d 28, 30-31 (1986).

{¶25} We review speedy-trial claims under a mixed standard. We defer to the trial court's factual findings if supported by competent, credible evidence, but we independently review the legal application of the statute. *State v. Larkin*, 2005-Ohio-3122, ¶ 11 (5th Dist.).

**Analysis**

{¶26} The dispositive question is whether more than 270 days, or 90 days under the triple count provision, as calculated under R.C. 2945.71 and 2945.72, elapsed before trial. The record confirms that they did not.

{¶27} Laughbaum was indicted on February 9, 2024. A bond hearing took place in the Court of Common Pleas for Ashland County, Ohio on April 15, 2024, and Laughbaum's initial appearance was scheduled for April 17, 2024. (Bond

Recommendation, April 15, 2025). Therefore, Laughbaum's speedy trial clock began to run on April 15, 2024.

{¶28} On April 18, 2024, the trial court ordered a competency evaluation after Laughbaum refused to respond to the court and counsel at his initial appearance. Such an order tolls the speedy-trial period. R.C. 2945.72(B); *State v. Palmer*, 84 Ohio St.3d 103, 106 (1998). Laughbaum does not challenge the trial court's order for a competency determination, and the record amply supports it. *See State v. Prim,* 134 Ohio App.3d 142, 156-157 (8th Dist. 1999).

{¶29} Therefore, the time period from the bond hearing on April 15, 2024, through April 18, 2024 - the date of the competency order – (4 days) is chargeable to the state. Because Laughbaum was incarcerated, those days count as 12 days under the triple-count provision. R.C. 2945.71(E).

{¶30} The period of time from the April 18, 2024, order that a competency evaluation take place, to July 11, 2024, the date on which Laughbaum was found to be competent to stand trial, is tolled and is not chargeable to the State.

{¶31} Once competency was restored, only 12 days elapsed before defense counsel moved for a continuance on July 23, 2024. Because Laughbaum was incarcerated, those days count as 36 days under the triple-count provision, chargeable to the State. R.C. 2945.71(E). Thus, a total of 48 days is chargeable to the State[2].

{¶32} As noted below, every delay following July 23, 2024, falls squarely within the tolling provisions of R.C. 2945.72.

---

[2] 12 days + 36 days = 48 days.

**{¶33}** Laughbaum's July 23, 2024, motion to continue tolled time until November 8, 2024. His January 14, 2025, motion to continue likewise tolled time through April 28, 2025. His April 29, 2025, request to continue the trial for a change-of-plea hearing tolled time through June 30, 2025 – at which time the trial court again continued trial. Delays attributable to the defense are chargeable to the defense. R.C. 2945.72(H).

**{¶34}** The trial court's continuances are equally proper in tolling the speedy trial provisions. The November 8, 2024 continuance, necessitated by a conflicting criminal trial, was journalized before expiration of the statutory period, identified the basis for the delay, and reflected a reasonable need. Such continuances are permissible. *State v. Lee*, 48 Ohio St.2d 208 (1976); *State v. Mincy,* 2 Ohio St.3d 6, 9 (1982). The same is true of the court's continuance from July 1 to July 14, 2025, when the State filed its motion for continuance.

**{¶35}** Finally, the continuance from July 22 to September 2, 2025, granted upon the State's July 14, 2025, motion to continue - due to the unavailability of a necessary witness - was reasonable and supported by the record. *See State v. Saffell*, 35 Ohio St.3d 90 (1988). This delay is likewise tolled under R.C. 2945.72(H).

**{¶36}** At no point did the trial court permit time to run beyond the statutory limit without a valid tolling event. Nor does the record reveal any improperly attributed delay.

**{¶37}** In applying the factors set forth in *Barker v. Wingo*, we first observe that the 507-day delay before trial is presumptively prejudicial. However, this threshold finding merely triggers further analysis and does not, standing alone, establish a violation of the right to a speedy trial.

**{¶38}** Turning to the reasons for the delay, the record demonstrates that the vast majority of the delay is attributable to Laughbaum's own motions. *State v. Phelps*, 2022-Ohio-3025, ¶ 38 (5th Dist.). This factor weighs heavily against him.

**{¶39}** Equally significant, Laughbaum never asserted his right to a speedy trial. The failure to assert that right weighs against a defendant in the *Barker* analysis and reflects a diminished claim of constitutional deprivation.

**{¶40}** With respect to prejudice, Laughbaum advances no specific argument demonstrating actual prejudice resulting from the delay. Even assuming, arguendo, that some prejudice could be inferred, the State has articulated legitimate and justifiable reasons for the delay that outweigh any such prejudice.

**{¶41}** Finally, the record contains no indication that the delay resulted from bad faith, harassment, or an attempt by the State to gain a tactical advantage. Nor does Laughbaum make such a claim. *See State v. Jenkins*, 2010-Ohio-2719, ¶ 54 (5th Dist.).

**{¶42}** Balancing all four *Barker* factors, we conclude that Laughbaum's constitutional right to a speedy trial was not violated.

**Calculation and Disposition**

**{¶43}** The time chargeable to the State is 48 days. All remaining time is tolled pursuant to R.C. 2945.72.

**{¶44}** A summary of our time calculation is as follows:

| Date Range | Reason | Tolled | Chargeable | Total |
|---|---|---|---|---|
| Apr. 15 - 18, 2024 | | No | 4 days (Tripled) | 12 |
| Apr. 19 - Jul. 10 | Competency | Yes | 0 | |
| Jul. 11 - 22 | | No | 12 days (Tripled) | 36 |
| Jul. 23 - Nov. 7 | Def. Mot Cont. | Yes | 0 | |

| | | | |
|---|---|---|---|
| Nov. 8 - Dec. 9 | Court Cont. | Yes | 0 |
| Dec. 10 - Jan. 13 | New Counsel | Yes | 0 |
| Jan. 14 - Apr. 28 | Def. Mot. Cont. | Yes | 0 |
| Apr. 29 - May 15 | Change Plea | Yes | 0 |
| May 16 – Jun. 29 | Court Cont. | Yes | 0 |
| Jun. 30 – Jul. 13 | Court Cont. | Yes | 0 |
| Jul. 14 - Sep. 1 | State Mot. Cont. | Yes | 0 |

{¶45} Because the total time chargeable to the State - 48 days - falls well below the 270-day limit, and the 90-day limit under the triple count provision, Laughbaum has failed to establish a prima facie violation of his speedy-trial rights.

{¶46} Laughbaum's first assignment of error is overruled.

II.

{¶47} Laughbaum asserts that the trial court erred by admitting the drugs recovered from his person because the State allegedly did not establish a proper chain of custody. He claims, therefore, that his conviction for aggravated possession of drugs is against the manifest weight of the evidence because at trial proper chain of custody for the drugs was not established.

**Standard of Review**

{¶48} Manifest-weight review examines whether the greater amount of credible evidence supports one side over the other. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19; *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In conducting this review, an appellate court functions as a "thirteenth juror," weighing all evidence and reasonable inferences, and evaluating witness credibility to determine whether the jury clearly lost

its way, creating a manifest miscarriage of justice. *State v. Jordan*, 2023-Ohio-3800, ¶ 17; *Thompkins* at 387.

{¶49} Because the jury observes witnesses firsthand, its credibility determinations are entitled to substantial deference. *Eastley* at ¶ 21; *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Reversal is warranted only in the exceptional case in which the evidence weighs heavily against conviction, and all three judges on the panel must concur. Ohio Const., Art. IV, § 3(B)(3); *Thompkins* at 387.

**Analysis**

{¶50} Laughbaum contends that the State failed to account for the handling of the narcotics before Detective Temple transported the evidence to the Ohio Bureau of Criminal Investigation ("BCI"), and that multiple individuals allegedly had access to the drugs while in storage, creating an impermissible break in the chain of custody. (Appellant's Brief at 9-10.)

{¶51} The State presented credible testimony establishing an unbroken chain of custody. Detective Temple conducted the pat-down search and recovered the suspected narcotics directly from Laughbaum's pocket. This encounter was captured on a body-worn camera, providing clear contemporaneous documentation. (Tr. at 41-45, 94-95; State's Exh. 1.) Detective Dudte then transported the evidence to BCI, where forensic scientist Shervonne Bufford received the sample on April 5, 2022. Bufford testified that the evidence showed no signs of tampering, and that testing would not have been performed if tampering had occurred. (Tr. at 53, 117-118.) Laboratory analysis confirmed that the substance contained .11 grams of dimethyltryptamine (DMT), a Schedule I controlled substance. (Tr. at 112-116; State's Exh. 4.)

**{¶52}** Ohio law is clear that any alleged break in the chain of custody affects the weight of the evidence, not its admissibility. *State v. Bazler*, 2018-Ohio-5306, ¶ 11 (5th Dist.). It is the jury's province to weigh the credibility of evidence and determine whether any irregularities diminish its persuasive value. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *State v. Ramos*, 2019-Ohio-3588, ¶ 25 (2d Dist.); *State v. Maranger*, 2018-Ohio-1425, ¶ 74 (2d Dist.).

**{¶53}** Here, the jury heard the testimony, observed the body-camera recording, and was fully empowered to evaluate the credibility of the evidence. It could reasonably conclude that the chain of custody was intact. The jury is entitled to accept all, part, or none of the testimony and to resolve conflicts in the evidence. *State v. Antill*, 176 Ohio St. 61, 67 (1964). Minor inconsistencies in how the drugs were handled do not render the evidence incredible or create a manifest miscarriage of justice. *See State v. Craig*, 2000 Ohio App. LEXIS 1138, *10 (10th Dist. Mar. 23, 2000).

**Conclusion**

**{¶54}** In light of the unchallenged, competent evidence presented at trial, Laughbaum's arguments regarding chain of custody are unpersuasive. The trial court properly admitted the drugs, and the jury, acting within its fact-finding role, reasonably credited the evidence. After reviewing the record in its entirety, we find no indication that the jury lost its way or that the conviction represents a manifest miscarriage of justice.

**{¶55}** The second assignment of error is overruled.

**{¶56}** For the reasons stated in our Opinion, the judgment of the Ashland County Court of Common Pleas is affirmed.

**{¶57}** Costs to  be paid by Appellant Stephen Laughbaum.


By: Popham, J.

Baldwin, P.J. and

Gormley, J., concur